Good morning, your honors. May it please the court, Ashwini Mate representing Rogelio Alonso Ruiz. Mr. Alonso is appealing two issues, neither of which triggers the plain language of the appellate waiver contained within this plea agreement. The first issue relates to the voluntariness of his guilty plea because the district court violated his Rule 11 rights. The second relates to the procedural reasonableness of the additional 12 months imposed in the supervised release revocation case. Since the government has conceded to the second issue, this argument will focus on the first. The district court violated Mr. Alonso's Rule 11 rights by failing to inform him that it did not intend to follow every recommendation contained within his binding plea agreement. The government response to your argument is that the 11C part of the agreement referred to the sentence on the illegal reentry. And the sentence with respect to the supervised release violation wasn't included. And therefore, the judge did not violate the plea agreement because as to the sentencing on the supervised release violation, that was just an ordinary recommendation as you would see in the more conventional plea bargain, and the judge does not have to accept that. What's your response to the government on that? The plain language of the plea agreement doesn't bear that out. The language of the 11C1C binding clause states that this agreement is made pursuant to Rule 11C1C. It doesn't state that parts of the agreement are made pursuant to 11C1C, and it's certainly not tied to the sentence stipulation concerning the illegal reentry sentence. By its own terms, the binding clause applies to the entire agreement, And that means every recommendation within the agreement based on the plain language of Rule 11 is therefore binding on the court. There was no objection at the time, correct? Well, arguably, the defense attempted to object and elicit the proper advisers from the court by reminding the court in the supervised release application case about the global plea agreement that the parties had agreed to sign. Both defense counsel tried twice, and the government actually reminded the court about that, about the global plea agreement, which took care of the sentence in the supervised release revocation case as well. The court either cut him off, refused to answer, and then quickly sentenced and concluded proceedings without giving counsel further opportunities to object. But even if this court doesn't deem those reminders sufficient to rise to the level of an objection, I still believe Mr. Alonzo's case survives plain error review. Tell me, I'm not yet, I'm agnostic on the point, Dennis, whether this is plain error. But help me understand, if this is plain error review, why are we reversed on plain error? I think the error here is plain. The requirements of Rule 11 are well known by this court. I think Justice Sotomayor in Freeman v. United States stated that this is a well-known requirement of Rule 11 C1C binding plea agreements. So the error, I think, is plain. It was certainly not affirmatively waived. This court has already ruled in United States v. Grabe that this kind of error affects the substantial rights of a defendant. And I think, indeed, in United States v. Grabe, this court decided that it affected the voluntariness of a defendant's guilty plea to bind them to an agreement, which they never agreed to sign, and without informing them as such. Am I right in remembering that this judge, he didn't apparently understand that this was a C1C plea? It was submitted in the plea agreement. I mean, it was in the plain language of the plea agreement submitted before the court. There's nothing on the record to my recollection indicating that he didn't know. I thought you said at the outset, I'm not bound by any of that. There was some representation made that there are we've stipulated to such and such, and the judge said, well, I'm not bound by any of that. Well, I mean, as far as I know, as sentencing law goes, I mean, courts aren't bound by agreements. They're just bound to give the proper advisals should they choose not to accept or reject or should they choose to reject the sentencing recommendations in an agreement. So that advice by the court is not necessarily untrue. They're not bound. They're bound to give a proper advisal or follow the requirements of Rule 11 C1C. Excuse me. I just got my voice back. Should, you know, they choose to reject the sentencing recommendations contained within a binding plea agreement. Can you help me understand what was the motivation for the defendant to stipulate basically to a mid-range sentence? That's kind of the package deal in these binding global plea agreements, where you're taking care of two cases where the same conduct gives rise to the supervised release violation and the new illegal reentry case all at the same time. I think frequently our office and the government reach these negotiations where we agree to, instead of the low end on the illegal reentry case, which is normally what we agree to in the fast track context, we agree to a middle-range sentence to accommodate sort of the supervised release violation and the new case all in the same package deal. And are they typically done as C1C pleas? Yes, to my knowledge. Okay. There wasn't anything about this particular court, the district court that you were in, that motivated that? No. Not that I know. Is there an almost per se rule on plain error if it's an involuntary plea bargain because he's ending up getting something that he really thought he wasn't going to get? That's the last prong on plain error. That is to say that it really substantially interferes with his fundamental rights or however that part of it's phrased. I understand the argument is plain in the sense that it's clear, but plain error includes this other thing about it's really a bad thing. It's not just that the error was an obvious error. What about an argument that seems to me plausible here? You know, they had this guy dead to rights and he didn't get a bad deal even if you do add the year to the mid-range sentence on the illegal reentry. Maybe he would have agreed to that. It turns out that's not what he thought he did agree to, but if that had been the proper deal, how do I work with that? I think if in this case especially, given that the practice in this court is to plea to a low end sentence on the illegal reentry in a straight illegal reentry context, he stood to actually negotiate a lower sentence, seven months off his sentence, which is not insignificant to defendants in any context. And so I think he had substantial prejudice, which adhered to his case by not being allowed or by the judge failing to permit him the opportunity to withdraw his guilty plea once the district court decided it didn't intend to follow any of the recommendations contained within his plea agreement. For me, this may turn on whether it's plain error or not. I've got the excerpts of record here in front of me. Can you point me to the places where the attorneys are trying to point out to this judge, hey, wait a minute, this is a malignancy? Yes. And ER 55, defense counsel states your honor. Hang on, hang on, I'm still turning pages. Okay, I've got it. Defense counsel states your honor, as part of the previous resolution, Mr. Alonzo has agreed to admit to the first allegation and the government has agreed to recommend no additional time based on the court's previous sentence. And then on the next page, the government actually reminds the court again of the global plea agreement. Okay, hang on, okay. We jointly recommend that a position accounts for the second allegation. The state will not be proceeding to this. There's not evidence on the gun, on the drugs. Okay, so far I haven't seen an objection. And on page 58, the defense counsel, ER 58, defense counsel once again states that the parties have agreed to a mid-range sentence and that no additional time is necessary. Yeah, okay. To the extent that this is sort of, you know, as we construe it, the defense trying to remind the court of its obligations based on the plea agreement and as the court followed the plea agreement in the previous case. Boy, this is hard for me to see as a very clear objection. This isn't saying to Your Honor, this is an 11C and our recommendation is binding. You can reject the plea agreement, but if you accept the plea agreement, you can't reject our recommendation on the sentence. And I think the problem comes when because the district court never actually followed the first rule of 11 right, which is to inform the parties that it wasn't going to follow the plea agreement in the supervised release revocation context. Without that idea, how is defense counsel to, you know, actually state, you know, objection you have to give him the opportunity to address? Well, but there comes a point at which the judge sentences him to 12 months on the supervised release. Where's the objection to that? Right. And I think at that point, the judge really quickly concluded the proceedings on ER 58 without actually giving counsel opportunity to object. He simply stated sentence and concluded proceedings. I understand the impatience of this particular judge and so on, but I wouldn't mind something on the record that says, hang on, judge, mistake. Okay. Got it. Let's hear from the government and you've got a little bit. Good morning. Jean-Claude Andre on behalf of the United States. The plea agreement in this case was designed by our office to address this precise situation where when we have our biggest dog in the fight, which is on the new illegal reentry case, we want to get a defendant's plea. We'll stipulate to a sentence. That will be after negotiation. Maybe it's low end, mid range, or high end. And we want to lock that in to move the case along. But because in the revocation matter, we don't have the same big dog, it's really a breach of the court's trust. We agree to make a recommendation and essentially leave it up to the district court, the probation office, and the defendant to then, you know, reach the appropriate resolution. Well, I understand that might be what you want to do, just as I understand as what the defense attorney might have wanted to have done, is to make a clear objection. But what you actually did, as I read the plea agreement, it's far less than clear that you take out of the 11C the sentencing on parole revocation. Well, if I could respond two ways. One, there is no 11C-1C mechanism for a revocation matter. Again, I mean, that's governed by, I think, Rule 32. Again, it's between the probation office, the district court, and the defendant. It's not a criminal charge, even though it is in an old criminal case. The second thing, Judge Fletcher, is in this case we did try to separate it out as best as we could. And, of course, the court is free to disagree. But we had, you know, nine paragraphs of distance between the 11C-1C stipulations and the words we used there were agreed upon sentence. And then the USAO's obligations, nine paragraphs later, agreeing to recommend a particular sentence in the revocation matter. How many paragraphs separated the 11C and the paragraph dealing with the 64 months? Quite a few. Yeah. I believe it's four, maybe. I mean, it's just... They're separated. Both of them are separated. But, I mean... That doesn't do very much for me. Well, but we do have underlined headings. And, again, you know, we're trying to make these things as easily understood by defense counsel and by defendants and by the courts as possible. And this is a bit of a tease, but I have to say that if you're trying to make this easily understood, you failed. Or if you want to say, if you're trying to make it easily understood in the way that you now say you intended, you failed. Your argument is not frivolous. I mean, I don't want to say that. But, boy, you didn't convey very clearly, to me at least, that the supervised release sentence was outside of the 11C. Isn't that fatal for your position? Because I thought the rule was well settled. The ambiguities and plea agreements are going to be resolved against you. No, they are. Although, I mean, I guess with some daylight. We are, in this case, fortunately, I think for the government's position, we are two institutional litigants. It's the Public Defender's Office and the U.S. Attorney's Office. And although this doesn't come up a ton, I think three times this year we have plea agreements like this. In fact, the Public Defender's Office is still signing off on agreements just like this one. I did two back six years ago when I was a rookie in a six-month stretch. Well, but most judges accept them. That's why it probably doesn't come up. No, and that's certainly why this court doesn't see it on appeal. And the only reason defendants are appealing is because Judge Reel decided to reject the government's recommendation on the revocation sentence. But, again, the agreement was designed to address this particular scenario where if the court, in his or her discretion, decides, you know, I'm really offended by the breach of my trust and decides to reject our recommendation, that it doesn't unravel both proceedings. It unravels just the revocation matter. Let me ask you, the reason I don't, your position doesn't seem to me to make any sense from the defendant's standpoint is that why would the defendant stipulate to the mid-range sentence and only have protection as to the new illegal reentry case under your reading of the C1C component? Well, I think because, first, that's where, as I think Judge Fletcher said, that's where we really have the defendant dead to rights. That's also where the defendant has the bigger sentencing exposure. And, you know, we do actually negotiate these things, even though I mentioned before that we are institutional litigants. Sometimes we do low-end, even though we are resolving both matters. Sometimes we do mid-range. More often than not, we do high-end. And so, I mean, I didn't handle those. I've never seen a defendant stipulate to something other than low-end unless they thought they were going to, he or she thought they were going to get something out of it. And here it seems to me the only thing the defendant can possibly think they're getting out of the stipulation is that at least I've got back-end protection on the revocation precedent. Some back-end protection, if I can, you know, I guess, parse words a little bit, insofar as they got our recommendation to a particular sentence, 12 months, as opposed to 24 months or the stat max. And that is meaningful. I mean, Judge Real happened to reject it in this case. You know, in most cases. The recommendation you were committed to making was no additional time, right? Right, right, right. Sorry. Okay. I misspoke. I'm sorry. Yeah. So, you know, they got a recommendation out of us, and that is meaningful. But Judge Real had discretion to reject it. And, you know, fortunately, as we conceded on that actual particular sentence, Judge Real didn't say enough under Hammons and Wachnine so that that particular sentence has to go back. And that's the portion where you concede that the 12-month sentence for the supervised release violation has got to go back. That's wrong, right? It's procedurally inappropriate insofar as, you know. Let me just be clear. The C1C component of this is meaningless to the defendant given that he's stipulating to a mid-range sentence unless he's protected with respect to the revocation proceeding, right? What other? I mean, what? So he goes in, he gets stuck with the mid-range sentence when he really would like the low end. And so then you say, oh, okay, well, you're not able to back out now. You're just going to have to take whatever the judge gives you in the revocation proceeding. That doesn't seem like a very good deal to me is all I'm saying. So why would the defendant even enter into it? I mean, the answer to the first part of your question is yes. The defendant got our agreement to a particular sentence on the new matter, and that's locked in so long as the judge doesn't reject the agreement. And then the defendant got our recommendation to no additional time in the revocation matters. Is there anything about this defendant and this case that would have taken him away from a low end recommendation on an 11C if there had not been, in addition, the supervised release violation? Not that I'm aware of. Again, I didn't handle it, but, I mean, I would say. I understand that he was apprehended when there was a call that somebody with a gun appeared to be dealing drugs. But the state dropped those charges for insufficient evidence. I mean, why there was insufficiency, I don't know. All I get is the reference. Now, it occurred to me to wonder, well, maybe this is up to mid-range because of your office's suspicion. Hey, this is not just somebody who came back in, but there's somebody who comes in back in as a bad guy. So I'm trying to figure out, is there something about this case that would have produced mid-range, irrespective of the supervised release, and you're saying you just don't know. I don't know, but my best supposition is that there is nothing, and that it is, in fact, the revocation matter or the recidivism here that led to mid-range. Although I will also point out that if you do look at the three available options, low end, mid range, high end, that low end is not at all the norm in these cases where we try to resolve both the old revocation matter and the new case. In fact, again, the two that I handled six years ago, we went high end. I think the one that was signed just this week was high end. So, you know, low end is typically not available to defendants in this kind of case. It typically is mid range or higher. But had there not been a revocation matter, to get back to your question, Judge Fletcher, I imagine we would have stipulated to low end in 11C1C. Yeah. Well, that then means that this kind of reinforces a bit what Judge Watchford is suggesting, that why would this defendant agree to this mid range unless he thought that the recommendation with respect to supervised release was binding? Well, one reason you may have, in addition to what I already said, is that, and again, I didn't participate in the negotiation, that in fact the person who did handle this case has left our office. He got mid range instead of high end. I mean, so there's a benefit on the 11C1C case as well as the benefit. Compared to what? I mean, if you're telling me that this case, absent the provisional release revocation, might have been low end, well, the proper comparison is not mid range to high end. The proper comparison is low end to mid range. It isn't so far as, I guess, if we do assume away the revocation matter, but the reality is that this defendant decided to come back sufficiently quickly that his supervised release hadn't run while he was abroad. And so the reality is that we could have said, no, we're not giving you an 11C1C. You can plead open and we're going to advocate for stat max on the new case. No, you could have done a lot of stuff. I mean, you could have done a lot of stuff that was worse. I mean, I guess what I'm trying to say, I guess this is my punch line, is the case is unfortunate in so far as, you know, Judge Reel did not go along with what both parties recommended here. But as far as the plea agreement is concerned, you know, we tried to do our best in giving the defendant a fair deal. But when you parse out the fact these are two cases, two different district court cases, two different, you know, appeal numbers as well, you know, Judge Reel had discretion in two ways. He could have rejected the 11C1C in that case. He did not do so. And then he also had, you know, broad discretion in the revocation matter to sentence the defendant anywhere up to the revocation stat max. If I'm near reading the plea agreement, let me ask you one last thing. What do I do about plain error? Judge Reel is pretty hasty there at the end. And when it becomes perfectly clear what he's going to do, which is say 12 months on supervised release, it's basically 12 months, ma'am, I'm out of here. Well, that's why we're conceding in that case. But in the first case. Conceding what? Conceding that it is not plain error? No. We're conceding that there is plain procedural sentencing error in the revocation matter. No. I'm after the plain error question as to whether or not he violates the plea agreement. And did not allow, even allow an opportunity to object when it became clear that he was, in fact, not going to comply with the recommendation. The problem there, and I realize I may be, you know, swimming upstream here, is I think the premise that this plea agreement governed both cases. Again, putting aside whether we did a good job of separating the paragraphs in the agreement, the plea agreement was not filed in the revocation matter. These matters were called separately by Judge Reel. He could have called them together. Defense counsel could have asked for them to both be called together. But they were handled as separate cases. Well, they're handled as separate cases, but you put them in the same plea agreement. We didn't. We didn't. If I could. The agreement starts and ends. And between the beginning and the end, we have handled with recommendations as to both the illegal reentry and the supervised release violation. In that respect, they are not handled separately. Again, I mean, I take the Court's point that you didn't do a very good job of putting this together, but. No, you didn't do a very good job of keeping them apart. Fair enough. But the way that we at least, you know, intended to do this and interpret it. No, no. I'm taking you over time, but what I'm really after is just I'm focusing on the plain error point. And plain error with respect to the voluntariness of the plea. I have trouble finding an actual objection. On the other hand, I have trouble finding an actual space in which this particular judge would have been willing to sit long enough to hear the objection. Understood. So is this plain error review or not? We think it is plain error review. We think the defendant should have, you know, said at some point, this is an 11C1C that covers both cases. Or the defendant could have said, please call these cases together. If I could, I guess, borrow 30 more seconds. As far as Grabe and the prejudice point, I haven't tried to look at whether Grabe is reconcilable with Vaughn and Penitas, but Grabe is an old case. And so with respect to your question, Judge Fletcher,  as to just whether the defendant was given an opportunity to withdraw or instead as to whether the end result would have been different. In this case, we think the end result would not have been different. If the defendant had objected, Judge Riehl would have said, you know, I'm going to give you a total package of, you know, 76 months. I believe it, yeah. Thank you. Put a minute on the clock, please. Just briefly, Your Honors, with respect to the government's question about Grabe and Dominguez-Penitas and Vaughn, Dominguez-Penitas and Vaughn only overrule Grabe as to the standard of review. And I believe as to whether or not you can look just to the plea colloquy or the entire record to determine if the defendant knew of the waived rights that they were not informed of at the plea hearing. And that's it. I don't think that it overturns Grabe as to the fact that failing to be informed of whether or not they could withdraw their guilty plea affects the voluntariness of a defendant's guilty plea. And I'd also like to turn you to the excerpt of record, page 55. After defense counsel tries to remind the court about the previous plea agreement, the court explicitly says, no, I haven't made any determination yet, counsel. And essentially refusing to comply with Rule 11 and give the defense a preview of what its decision is, which is required by Rule 11C5 to inform the defendant if it did not intend to follow the plea agreement. And so this is the point where I think if the court failed to actually inform the defense of what it was intending, defense counsel could have had the opportunity to adequately object. I think the district court here really shut the defense down every single time they tried to elicit the proper advisals in this context. Thank you. Thank you, Your Honor. Thank both sides for your arguments. The United States v. Alonzo submitted for decision.
judges: Fletcher, Smith, Watford